J-S26034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                         :          PENNSYLVANIA
                                                          :

                       v.                                          :
                                                          :
                                                          :

MIGUEL ROSADO                                            :
                                                          :

                     Appellant                       :      No. 1133 EDA 2022

Appeal from the Judgment of Sentence Entered March 28, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006615-2018

BEFORE: STABILE, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED NOVEMBER 28, 2023**

Miguel Rosado appeals from the judgment of sentence entered on his convictions for criminal use of a communication facility and conspiracy to commit aggravated assault.[1] Rosado challenges the sufficiency of the evidence supporting the conspiracy conviction. We affirm.

Rosado was arrested following the shooting of twin brothers Julian and Julius Whitehead. In August 2021, the court held a jury trial. The trial court set forth the testimony and evidence, which we incorporate herein. *See* Trial Court Opinion, filed Oct. 4, 2022, at 2-9 ("1925(a) Op.").

In short, Rosado was at a barbeque at Xavier Santini's house. Santini asked Rosado to leave, but Rosado refused. Santini and Rosado began to fight, and the Whitehead brothers, who lived on the block, arrived and assisted

_____

[1] 18 Pa.C.S.A. §§ 7512(a) and 903, respectively.

Santini. Rosado left and said, "I'm going to get my big man." N.T., Aug. 24, 2021, at 87; N.T., Aug. 25, 2021, at 18.[2] He went to the corner and made phone calls to summon support, while repeatedly looking back toward the house where Santini and the Whitehead brothers were. Julian, who practiced martial arts, went in his house and grabbed a sword known as a katana, which he left on the porch. Julius retrieved a firearm that he put in his waistband.

Steve Berrios arrived to aid Rosado and spoke with him. After other people arrived, Rosado, Berrios, and three other men returned to the street in front of the Whitehead brothers' house. Berrios, who walked next to Rosado, was visibly carrying a firearm. Julius testified that he asked Berrios why he had a gun, and Berrios responded, "I don't rumble." N.T., Aug. 24, 2021, at 104. A fight ensued, and both Julian and Julius were shot.

The Commonwealth introduced surveillance video that captured the corner where Rosado made phone calls. For a portion of the video, police cars are across the street due to a traffic accident.[3]

Rosado testified at trial that he did not know Berrios well. He stated he did not ask anyone to bring a firearm, as he just wanted help to stand up to and fight Santini. He testified he felt "shocked and scared" that Berrios and

_____

[2] Rosado testified that he said he was going to call "[his] man," and did not say "big guy." N.T., Aug. 26, 2021, at 109. When reviewing the sufficiency of the evidence, however, we view the evidence in the light most favorable to the Commonwealth.

[3] The video is not part of the certified record, but the parties do not dispute that is showed police cars responding to a traffic accident.

Julius had guns. N.T., Aug. 26, 2021, at 119. He testified that he ran when he heard the gunshots.

The jury found Rosado guilty of criminal use of a communication facility and conspiracy to commit aggravated assault against Julian Whitehead.[4] The trial court sentenced Rosado in March 2022 to 70 to 140 months' incarceration for conspiracy and one to two years' incarceration for criminal use of a communication facility, concurrent to the conspiracy sentence. Rosado timely appealed.

Rosado raises the following issue:

> Conspiracy requires an agreement, a shared intent, and an overt act to commit a crime. Miguel Rosado was convicted of criminal conspiracy to commit aggravated assault after Steve Berrios, who was in a group with Rosado, shot Julian Whitehead. Can the conviction stand when the evidence failed to prove that Rosado had a shared intent and an agreement with Steve Berrios to bring a firearm to the scene and commit aggravated assault?

Rosado's Br. at 3.

Rosado argues the Commonwealth did not present sufficient evidence to establish he had a prior agreement or shared intent to commit aggravated assault, and therefore failed to establish the elements of conspiracy. Rosado claims Berrios acted alone in bringing the gun and therefore argues the Commonwealth failed to prove that Rosado had a "shared specific intent to

_____

[4] The jury found Rosado not guilty of two counts of attempted murder, two counts of aggravated assault, and one count of conspiracy to commit aggravated assault. 18 Pa.C.S.A. §§ 901 (of 2502), 2702(a), and 903, respectively.

attempt [to] commit serious bodily injury upon anyone." ***Id.*** at 15. He contends his only intent was "to save face after . . . Santini[] assaulted him." ***Id.*** at 11. He claims he enlisted help to ensure it was a fair fight.

Rosado further claims the Commonwealth did not prove an agreement to commit aggravated assault. He claims he did not know Berrios well. He further claims there was no evidence that he knew Berrios had a firearm or that he could have stopped the shooting once Berrios brandished the gun. In Rosado's view, the jury based "its verdict on a non-sensical inference that [Rosado] assembled a team to do serious bodily harm to [Santini] and the Whiteheads." ***Id.*** at 18. He claims this inference does not make sense because on the same corner that Rosado placed the calls, the police were present for a traffic accident, and his children were nearby, at Santini's home.

When reviewing the sufficiency of the evidence we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Barnes***, 871 A.2d 812, 819 (Pa.Super. 2005) (citation omitted).

"To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a 'co-conspirator') to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime." ***Id.*** (citation omitted). "The essence of a criminal conspiracy,

which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators." *Id.* (citation omitted).

Direct evidence of the defendant's criminal intent or the conspiratorial agreement "is rarely available." *Id.* at 820 (citation omitted). The Commonwealth may prove both the defendant's intent and the agreement "through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." *Id.* (citation omitted). If the trier of fact finds an agreement existed, and that the defendant intentionally entered into it, the defendant "may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Id.* (citation omitted). In the case of a multi-person fight, "two participants can form a conspiracy to assault another person by discussing at length a plan to assault that person, or, alternatively, those same individuals can form the illicit agreement by mere nodding of heads, so long as they possess the requisite intent." *Commonwealth v. Chambers*, 188 A.3d 400, 411 (Pa. 2018).

Further, to establish aggravated assault, the Commonwealth must prove that the person "attempt[ed] to cause serious bodily injury to another, or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent

disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* at § 2301.

The trial court found the evidence sufficient to support the verdict:

> The jury properly found [Rosado] guilty of conspiracy to commit aggravated assault with respect to victim Julian Whitehead. The record shows that [Rosado] entered into a physical altercation with Santini, after Santini asked [Rosado] to leave his home and [Rosado] refused to do so. Julian's sister, Priscilla Brown, called Julian, who lived on the same block, to come over and assist Santini. Julian ran to Santini's house, and threw a "quick body shot" to knock [Rosado] out of a headlock with Santini. [Rosado] then ran away, yelling, "I'm going to get my big man!" [Rosado] stood on the corner and called his friend Oscar Fuentes, asking him to gather some men to help him fight. [Rosado] admitted that he was "angry" because he got "rolled on" and wanted to fight. Berrios arrived on the scene first and spoke with [Rosado], who pointed out Julian, Santini, and others standing in front of Julian's house. Video surveillance showed [Rosado] and Berrios having at least two conversations before Fuentes and two other men arrived. All five men then approached Santini, Julius and Julian, where Berrios brandished a firearm and said, "I don't rumble." One of the men punched Julian in the face and then Berrios shot Julian in the chest. The first police officers to arrive on the scene rushed Julian to the hospital, where he underwent emergency life-saving surgery.

> This evidence was sufficient to demonstrate that [Rosado] entered into an agreement with Berrios to cause serious bodily injury to Julian. [Rosado] readily admitted that he was angry, looking to fight, and waited at least twenty (20) minutes for his friends to arrive. He called Fuentes and his friends to come to the scene and cause physical harm to Julian. [Rosado] knew that Berrios had a gun because Berrios brandished it as they walked shoulder to shoulder towards Julian's home, and therefore, [Rosado] knew that Berrios could fire it immediately. It does not matter whether [Rosado] specifically verbally asked Berrios to shoot Julian because under the law, "each individual member of the conspiracy is criminally responsible for the acts of his

coconspirators committed in furtherance of the conspiracy." Taking all of this into consideration and looking at the facts in the light most favorable to the Commonwealth as verdict winner, the evidence adduced at trial was sufficient for the jury to find beyond a reasonable doubt that [Rosado] and Berrios had engaged in a criminal conspiracy to commit aggravated assault, which resulted in life threatening serious bodily injury to Julian.

1925(a) Op. at 13-14.

We agree with the trial court that the Commonwealth presented sufficient evidence to establish Rosado intended to commit aggravated assault and entered an agreement to do so. After a fight with Santini and the Whitehead brothers, Rosado left and made phone calls to solicit help from others in a second altercation. Before returning to the scene of the fight, he spoke at least twice with Berrios. When more people arrived, Rosado, Berrios, and three others returned to fight, with Berrios walking next to Rosado and visibly carrying a firearm. Further, prior to the fight, Berrios, who still was next to Rosado, stated he had a gun because he "didn't rumble." This evidence was sufficient to establish each conspiracy element beyond a reasonable doubt.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/28/2023

- 7 -